IN RE BOWMAN's WILL: McNAUGHTON, Executrix, Respondent, vs. McGREGOR and another, Executors, Appellants.

*November 7—November 26, 1907.*

*Wills: Probate: Testamentary capacity: Undue influence: Costs in supreme court.*

1. In a proceeding to probate a will a showing that the testatrix, although eighty-six years of age, throughout the fourteen years of her life after her husband's death had actively managed her property and displayed unusual mental vigor up to the time of her death, is *held* to establish testamentary capacity.

2. In a proceeding to probate a will the evidence, stated in the opinion, is *held* to sustain a finding of the trial court that in making the will the testatrix acted freely and without compulsion and according to her own judgment and discretion.

8. Where the contestant of the probate of a will was named as executor of a former will, which the trial court found was the will of testatrix until revoked by the will in question, and, under the circumstances, the contestant was called upon to present the former will for probate, necessarily resulting in contesting the later one, the supreme court orders the taxable costs and disbursements of the contestant in that court paid out of the estate.

APPEAL from a judgment of the circuit court for Waupaca county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

It appears that on the 14th day of March, 1904, Elizabeth Bowman, now deceased, made and executed a paper writing in the form of a will. By its provisions $100 is given to Mary G. Long, who is not her daughter; her household furniture and all of her real estate is devised to her daughter *Alice Matilda McNaughton,* who is also appointed executrix; and the remainder of her personal property is given to her three daughters, Annie McGregor, *Sarah Steenberg,* and Elizabeth Bronson, in equal shares. The will was admitted to probate by the county court of Waupaca county, and on appeal the circuit court affirmed the judgment of the county court. *Alice M. McNaughton* petitioned the county court for the probate of the will, and *Duncan McGregor* and *Sarah Steenberg,* who are named as executor and executrix in a will of Mrs. Bowman dated December 18, 1895, duly filed objection to its probate, alleging that at the time such will is alleged to have been executed Elizabeth Bowman had not sufficient mental capacity to make a will, and that if she made and executed the alleged will she was induced to make and execute it by the unlawful conduct and undue influence of her daughter *Alice M. McNaughton* and her husband, Joseph B. McNaughton. Upon the trial of the contest for the probate of the will the court found the following as facts: At the time of her death Elizabeth Bowman was eighty-six years of age. She had lived for over forty years in the city of Waupaca, and was the widow of Richard H. Bowman, who

died July 10, 1890. She left surviving her as heirs the four daughters named in her will, all of whom left the parental home long prior to Mrs. Bowman's death, except *Alice*, who lived at home with her parents as long as they lived. The husband and father left all of his estate to his wife, the decedent. The daughter *Alice* from her early youth and to the time of their deaths devoted herself to the care of and gave attention to her parents. At a time long prior to the father's death it was agreed by the parents and *Alice* that if she remained living with them during their lives and cared for and attended upon them as their necessities might require she should receive their real estate, consisting of a farm, by will or otherwise, and that pursuant to such promise and arrangement *Alice* continued to reside with her parents, to care for and attend upon them at all times and under all circumstances during their lives. On April 6, 1895, *Alice* married Joseph B. McNaughton, and from that time *Alice* and her husband both resided with Mrs. Bowman. From this time *Alice* and her husband contributed to and paid part of the household expenses. Throughout the period they so resided together they all lived a contented, happy, and peaceful life, excepting slight disagreements incited by parties not of the household.

"Elizabeth Bowman was a woman of strong, forceful character, though somewhat spoiled and petted by the indulgence of her said daughter *Alice Bowman McNaughton,* and a woman who preserved her physical health and mental strength up to the time of her final sickness and death to the extent that she was capable at all times of understanding her property rights, her relations to those with whom she was associated, her children, and her duty to them."

"At the time of the writing, signing, witnessing, and executing of said instrument bearing date March 14, 1904, the said Elizabeth Bowman was of . . . sound mind, and before and since the making of the said will had always been, through her whole lifetime, to the time of her last sickness, of sound mind."

The instrument dated March 14, 1904, admitted to probate by the county court of Waupaca county, expresses her free act and deed, and was made and signed by her without any wrongful or undue influence being exercised upon her by either her daughter *Alice* or her husband, Joseph B. McNaughton.

In addition to these facts as found by the trial court, the evidence discloses that Mrs. Bowman made a will on December 18, 1895, whereby she gave her whole property in equal shares to her four daughters, and appointed *Duncan McGregor* and her daughter *Sarah Steenberg* as executor and executrix of the will; that this was at that time her will; that it was never destroyed, and that it is now presented by the contestants as her last will; that Mrs. Bowman conducted her personal and business affairs, and that she had an intelligent and accurate understanding of what property she had and the business connected therewith up to the time she made the will on March 14, 1904. The evidence discloses that she desired to make disposition of her property, and for this purpose had Mr. Hart, an attorney at Waupaca, called to her home by Joseph B. McNaughton. Mr. Hart called on her and she explained to him that she wished to make a will. She was alone with Mr. Hart while she discussed the nature and kind of her property and how she wished to dispose of it by will. She informed him what provisions she wished inserted in the will. After Mr. Hart had drawn the will as directed Mr. Williams was called to the house by telephone message to subscribe the will as witness. After his arrival her daughter *Alice* and her husband were present when Mr. Hart read parts of the will so prepared by him at Mrs. Bowman's direction. After making a small bequest to Miss Long she gave one half of the remainder of her property to *Alice* and the other half in equal shares to her other three daughters. *Alice* and her husband protested to Mrs. Bowman against this disposition of her

property, declaring that the will was not as she and her husband had promised *Alice*. They claimed that she and her husband had both promised *Alice* to transfer the farm to her if *Alice* would remain with them throughout their lives. They claimed that *Alice* had kept her part of this arrangement, and they further stated to her that *Alice* could not keep her promise from this time if the farm was not to be willed to her. After this protest a discussion and conference took place, participated in by Mrs. Bowman and *Alice* and her husband. Mr. Hart participated to an extent sufficient to enable him to ascertain what changes, if any, she desired to make in the will then prepared. This conference was also in the presence of Mr. Williams, a subscribing witness to the will. *Alice* and her husband insisted that Mrs. Bowman ought to give *Alice* the farm. Mrs. Bowman seems not to have denied their claim and to have said little in regard to it, but after about half an hour she indicated that she had concluded that she would give *Alice* the farm, and the remainder of her property, excepting a small bequest to Miss Long and her household furniture, to her three other daughters in equal shares. At this point of the transaction Mr. Hart suggested that the will be not drawn then, but that it be postponed to some future time. Thereupon the decedent requested him to prepare a will as she had then decided to make it. The evidence shows that Mrs. Bowman maintained her self-possession throughout this interview, and fully comprehended and understood the difference in the disposition of her property made by the will she first directed Mr. Hart to draw and which she then refused to sign and the one she then directed him to prepare for her. Three days thereafter, on March 14, 1904, Mr. Hart, while alone with her at her home, presented and read to her the will in question, and asked if this disposed of her property as she desired, and explained to her that she ought not to execute it unless it expressed her wishes on the subject. She then expressed

McNaughton v. McGregor, 133 Wis. 494.

her approval of its provisions as expressing her wishes in dis-
posing of her property and signified that she wished to sign
it. She then signed her name to it in his presence and di-
rected Mr. Williams to be called. After his arrival she de-
clared it to be her will in his presence and in that of Mr.
Hart. Her interview with Mr. Hart lasted about an hour ·
without the presence of any other person. Witnesses Hart
and Williams testify that she appeared to act voluntarily in
the matter. There was considerable conflicting evidence as
to her mental capacity to make a will, which need not be
stated in detail in this place. The court found that the
proposed will was her last will and testament, and affirmed
the judgment of the county court admitting it to probate. .
This is an appeal from such judgment.

For the appellants there was a brief by *Browne, Browne &
Fisher,* and oral argument by *E. E. Browne.*

For the respondent there was a brief by *Park & Carpenter,*
and oral argument by *B. B. Park.*

SIEBECKER, J. Appellants assail the trial court's conclu-
sions that the testatrix had testamentary capacity when she
made this will and that she was free from all constraint and
compulsion and was not impelled by undue influence to make
it in place of the one decided upon by her three days before.
The evidence shows that the testatrix throughout the fourteen
years of her life after the death of her husband actively man-
aged her property and displayed unusual mental vigor up
to the time of her death. From a consideration and study
of the evidence it is manifest that she retained her mental
faculties to the last and had a clear and comprehensive under-
standing of what property she had and of her relations to
all who might properly be regarded as her beneficiaries. It
appears that she fully understood and comprehended the pro-
visions of the two wills Mr. Hart had prepared by her direc-
tion on the 11th and 14th days of March, 1904. Throughout

these transactions her mental capacity was clearly mani-
fested, and her conduct showed that she held all the matters
appertaining thereto clearly in her mind, and acted intelli-
gently and rationally in determining what disposition to
make of her property. The evidence of witnesses who de-
tailed the circumstances upon which they predicated an opin-
ion of her testamentary incapacity is too meager in scope to
give it much probative force, and is effectually rebutted by
the facts and circumstances showing her actual participation
in and comprehension of the daily concerns of her life and
her personal management and control of her business and
property.

The main ground urged for a reversal of the court's find-
ings is that she was impelled by undue influence to make a
different will on March 14, 1904, from the one she had de-
cided to make on March 11th. It is claimed that the pro-
test of her daughter *Alice* and her husband, made to her
when she was about to sign the first will, operated to unduly
influence her to change her mind. The substantial facts and
circumstances of this interview are given in the foregoing
statement. From them it appears that the will of the testa-
trix as made on the 11th of March was not in accord with the
promise and arrangement made by her and her husband to
the effect that if *Alice* would remain with them and care for
and nurse them through their lives as their necessities might
require she should receive the farm. The protest of *Alice*
and her husband against signing the will she had then di-
rected to be drawn without giving *Alice* the farm was made
in the presence of Mr. Hart, Mrs. Bowman's legal adviser,
and Mr. Williams, who had been called in to attest the execu-
tion of the will. The conduct of the parties was free from
any attempt to enforce any claim to her bounty, except that
they asserted the claim of *Alice* to the farm for her many
years of service in caring for and nursing her parents. An
examination of the evidence discloses nothing tending to

show that she was coerced and impelled by undue influence to make a different will from the one she had directed Mr. Hart to draw at this time. It appears that when this subject was presented to her she voluntarily determined not to execute the will which had been then prepared and that she was left entirely free to make such a will as she might choose. It is averred that the threat of *Alice* and her husband to leave her if she did not comply with their request to give *Alice* the farm so operated on her as to cause her to make a will she did not intend. True, they stated that if the former promise to *Alice* was to be disregarded they would feel compelled to seek a home elsewhere, but there is nothing in the conduct of the testatrix to show that she was thereby impelled to make a will different from what she intended on the following 14th day of March. It is clear that she acted freely and voluntarily in making and executing this last will. She and Mr. Hart conferred as to its provisions in the absence of *Alice* and her husband and other persons, and she was then counseled by Mr. Hart not to make this will unless it was in accord with her judgment and wishes and was her free act uninfluenced by others. She then expressed herself freely and stated that this will expressed her wishes and that it disposed of her property accordingly. A consideration of the facts surrounding the making and execution of this instrument leads us to the conclusion that the trial court properly found that the testatrix acted freely and without compulsion and according to her own judgment and discretion.

Contestants ask for the costs incurred by them in this court in case their contest is not sustained, upon the ground that they were appointed the executor and executrix in the will of the testatrix made in 1895, which the circuit court found was her will until it was revoked by the will in question. This presents a situation widely different from the one presented had they contested this will without being the appointed executrix and executor in the former will. Under

the circumstances contestants were called upon to present such former will for probate, and this necessarily resulted in contesting this will. Upon these grounds they are allowed the taxable costs and disbursements in this court out of the estate.

*By the Court.*—Judgment affirmed.